Mayorkas v. Mayorkas Mayorkas v. Mayorkas  He challenges his presumed placement in the terrorist screening database run by the terrorist screening center. This is not a situation where the court is being asked to examine a plethora of different individual circumstances or to give dispositive weight to any outlier experiences. This case is about Mr. Gedi and the harm that he clearly alleges that he personally experienced. He articulates his standing in nothing deprived the district court of subject matter jurisdiction based on the allegations contained in his complaint. As we have set forth at our briefs and I'll run through here today, with this court's indulgence the allegations sufficiently show that Mr. Gedi has standing and properly alleges both Fourth and Fifth Amendment claims that section 46.110 did not deprive the district court of subject matter jurisdiction in this matter because the agencies against whom he asserts his claims are not named or covered by that statute. The reputational harm that he alleges is clearly articulated and specific. He does not rely generally on unpublished inclusion in the TSDB, the terrorist screening database, and he instead specifically articulates things that happened to him publicly such as being pulled off a plane after going through or having agents waiting for him at a specific gate for a connecting flight. And finally, his APA claims survive for many of the same reasons. They do not deprive this court of jurisdiction because he articulates the ongoing injuries that he continues to experience as a result of the extremely enhanced additional screening which he experiences regularly which far exceeds a mere inconvenience as those who have been described in some other circumstances. His allegations show standing because Mr. Gedi articulates a repeated history of events relating to him, not just one occurrence. In fact, he says every single time that he travels he endures extreme additional enhanced screening well beyond the norm. Your Honor, what relief are you seeking in this case? I mean I know you want an injunction, but what would it look like? Would it say he can no longer be subject to enhanced screening? I mean what's the remedy you want here? And I'm trying to figure out how that relates to some of these extreme situations you talk about where he's detained for hours or where his laptop was seized for weeks. Correct. Yes, Your Honor. What we are seeking in here, first of all, would be that the government be put to the facts to make a showing since he's challenging now the heightened screening. We're not saying that no screening can happen, certainly, but we're saying a heightened screening should require a heightened showing, and at least that of reasonable suspicion. So the government should be put to task to make it showing, to show that there is something that justifies the fact that this is repeatedly happening to this individual and to him with such regularity. So we would ask that the government make its additional showing. It has not done so. It has simply taken the trust me approach. And there have been other courts, for example, the Ninth Circuit recently remanded a case of Hassam al-Sharqawi to just have the government make an additional showing of what kind of searches had been done in that situation, and the government had to provide additional information. We would ask here that Mr. Getty be given the chance to go beyond a motion to dismiss to at the very least go through discovery to see what the government can show, what the government can show related specifically, again, to him, as to any due process that the government argues does exist. My colleague Acasio has made reference in pleadings to multiple declarations, which were not submitted to this district court and which cannot be taken for the truth of the matter asserted in this case. But we would like to have the opportunity, Mr. Getty would welcome the opportunity, to be able to take the facts that he has clearly alleged at this point and be able to do discovery to have the government again make the showing of why this is happening to him, something additional that will show what the, again, the heightened screening that is occurring with him on such a consistent basis, there's got to be a heightened showing for that. I think one of the incidents happened almost 10 years ago in Buffalo. Do you want us to address, or ask the courts to address that search ultimately and say it was illegal? I mean, there's no Bivens action for damages. Correct, there is no Bivens action for damages. But here with Mr. Getty and with the regularity with which he experiences these types of intrusive searches that go so far beyond the norm, it is a reasonable likelihood, it is likely that it will happen again in the future. And so we look forward to looking forward for him and with his anticipated future travel, Mr. Getty would ask that there at least be a requirement that the government have a reasonable suspicion before having him endure this again every single time that he travels going forward. That is something we are asking for probable cause. I thought your complaint largely talks about probable cause, that this was conducted without probable cause. And, Your Honor, I believe that as we've gotten more into the case law and the development since the drafting of the complaint, we are not asking for probable cause here. What we're asking for here is a reasonable suspicion showing. Certainly we understand that security is a compelling interest,  or that there be any guarantee that any future circumstances could never justify an additional search. He's not asking for a free and clear letter for all time's future, but we are simply asking that if the government is going to do this extremely heightened level of searching with him, that the government be held to a reasonable suspicion standard. What's the latest in time incident? Just to refresh my memory. As far as what's the latest in the complaint, it stops because the complaint was 2019. So it stops with, I believe, March 2019 for what is set forth in the complaint. We most certainly could, if this were sent back for remand, articulate what's happened since then and articulate the difficulties that Mr. Getty has endured. Now, realistically, he hasn't been able to travel as much because nobody was able to travel as much during that interim. And, in fact, we address that Somalia and the United Arab Emirates are two of the places to which he has had travel difficulties in the past. Currently, the Department of State website, as of June 17th of 2021 for Somalia, lists Somalia as a do-not-travel advisory. And the Department of State website, as of June 28th, lists do-not-travel advisory to the United Arab Emirates due to COVID-19. So there are some limitations on certainly a specific future, for example, itinerary that he might be able to set forth. But most certainly we could articulate what has happened in the interim with the times that he has traveled since the filing of the complaint. The complaint identifies through March of 2019 as the most recent travel difficulty. And that came after the completion of his DHS trip complaint, the resolution, I guess, or the end of his DHS trip complaint, which, again, did not provide him with any due process with any explanation. It simply provided him with a form letter that is sent to all who may be on the watch list but are not on the no-fly list that specifically states that he may or may not have been on a watch list. And there may or may not have been changes which occurred to the status that he may or may not have. But again, trust us to paraphrase, the government says we're doing what we need to do. He continued to have problems after that and set forth in the complaint. So that's it. Did he sue the right people? We believe he did, Your Honor, because the terrorist screening database is maintained by the terrorist screening center. And we have listed those individuals. Obviously, the names have rotated throughout various officials. And we list the FBI, which does the nominating. Those are not listed within, again, 46-110. As I know my colleague across the aisle will argue that this should be purely the purview of an appellate court. We don't believe that that's true because the problem is with his presumed placement in the terrorist screening database. And that is held and run by the terrorist screening center based on nominations by the FBI, again, neither of which are named in that particular statute. You were knocked out on a 12b-6, and I hear you in terms of what you're arguing about, discovering all that. I take it, well, you take the position you've pled all there is to plead. So amending pleadings is not in the thrust of an answer to Judge Costner's comment. An amended pleading is not in the grist. You're rising and falling on what you pled. Is that a fair takeaway? Your Honor, we do ask in the alternative for the opportunity to amend the pleadings if the court were to believe that more specificity is required as to the specific problems that he has held or as to what's continued to happen and what his future plans might be. Well, no, I'm not trying to create them. I'm just asking that you're on a 12b-6 is what you got poured out on,  where just a lot of these 12b-6 cases get to falling around. Well, I didn't get to replead. There's other things to plead, and I ask you, did you sue the right people? So I'm just trying to make sure what we have on the dashboard here is, you know, you're going with what you already pled, and that's not an issue. Then we've got to decide based on that. But if you say you pled, sued the right people, then I guess that's not an issue. I just get hung up on these official capacities and individual capacities and who really puts the list up, and, you know, that gets to be kind of a moving deal, particularly where the standing issue is here. But anyway. And, Your Honor, to that I would address that we believe that at this time, as far as we know, we've sued all the right people. We actually would, again, based on, to the best of his knowledge, we think that we have identified the right people for Mr. Getty's claims. But, again, we do ask in the alternative on all of the claims and in our briefing and did at the trial court for the right to replete if there is any deficiency which could be cured by repleting. And, again, that's something where, you know, if we had, if it came up through initial discovery and there was an amended pleading deadline that came subsequently and we determined that perhaps because of what we don't know now, that there was an additional need, then we would want to certainly could address it at that time if the case were remanded. Is your client, just to clarify, is Getty suing, is he challenging the search policies of TSA and CPB sort of generally for all those on the watch list, or is he just challenging the searches that occurred of him specifically? I would say, Your Honor, that obviously we have one plaintiff here. Right. So the examples that he gives are just as to him. I would expect that if reasonable suspicion is required for him and if the government has held a task for that showing, then it certainly could have a broader impact. I believe we have some language relating to another similarly situated being negatively affected. I ask because if it's the latter, he's just challenging the searches that occurred of him if he should have sued the actual agents that searched him rather than the agencies. He does, again, Your Honor, we have the specific factual examples as to him individually because we have one plaintiff, but he does assert that he and others similarly situated to him enduring the same sorts of things are having consequences of the same policies which are impacting him and impact others. I would mention that certainly based on the plethora of times and situations where this has happened with Mr. Getty, it's simply not feasible to list every officer. It's not feasible to go back and list every single time every FBI agent who may show up at a gate, every TSA agent who conducted a search. And I would state that as to the individual agents, if they're just simply getting a message, this guy's on a watch list, search him again. They're not making a decision. That decision was made by the people who put him on a watch list. So that's why we're going to go back to the heart of where the problem begins. Keeping a laptop for two or three weeks, searching someone for hours and hours, as I understand it, is not part of the enhanced screening policy. It is not what is listed as the standard such that it is enhanced screening policy. There may be documentation that we have not seen that the government has not provided, but to the best of our knowledge from what we've seen, we don't see any justification for it. That would indicate per Judge Willett's question that this is being decided on the scene by individual TSA employees. It's not being decided by the policy, the director of Homeland Security issues. And we simply don't know, Your Honor. I don't know what instructions the individual TSA agents are receiving, and I don't know who's making that decision. We believe upon information and belief, which is the best we can do at the Rule 12 stage, that Mr. Getty is suffering all of these because of his presumed placement in the terrorist screening database, which is then being disseminated and causing the waterfall effect of problems, which continue to affect him. Madam Clerk, give counsel an additional two minutes on the clock. We've got a lot going on here, so make use of it. If the other side needs it, they can get it. But you've got all kinds of deals here, standing and so on and so forth, to get through. Thank you, Your Honor. I do appreciate it. So help me out back to the question, you know, kind of what ‑‑ articulate for me, given in this 12B6 context, what the holding of this panel would be. I believe, well, from our point of view, Mr. Getty has pled sufficient allegations to at the Rule 12 stage and to defeat a 12B6 motion showing, again, his proper allegations of violations of the Fourth Amendment and the Fifth Amendment, as well as his APA claims, which would survive. Then how would we get to your sort of I'm not asking for probable cause. I want a reasonable suspicion standard. So how would we ever get to that? I mean, it just leaves your client with what he pled, but not necessarily any change in whatever the government has to put forth. That's why I asked the question the way I did. And, again, Your Honor, that is why in the alternative we do request that there be a remand for the opportunity to replete and to amend the pleadings, where we could at this point be more specific. We could articulate that what we are seeking is reasonable suspicion, which is included in what we pled. But I don't believe that having discussed probable cause in the original complaint is fatal to having also included reasonable suspicion with what we discussed. But we would like the opportunity certainly to address that, whether it's through discovery, through an amended complaint, whatever the appropriate avenue ends up being. You said earlier you asked the district court to replete. Where was that, and what filing did you ask the district court to amend? I can get the exact citation for that, Your Honor, when I come back for the rebuttal time. That will work. And address that. Thank you. I appreciate it. All right. Thank you. All right, Mr. Waldman. Good morning, Your Honors. Joshua Waldman for the Department of Justice. The district court correctly dismissed plaintiff's claims for lack of standing and failure to state a claim on the merits. Either independent ground is sufficient to affirm the district court's judgment. As for standing, plaintiff's complaint lacks any concrete or specific future travel plans. And for that reason alone, it fails to show any certainly impediment. Well, given all these trips to Somalia he's made and all of that kind of stuff, and assuming arguendo, all this stuff alleged, I mean, why would he have to, I mean, you know, it doesn't seem to be disputed. I mean, if he's made all these trips to Somalia and on and on, I'm putting aside this business of, you know, being an informant. I'm not into that. I'm just saying given what he's alleged and unless there's some showing it didn't happen, why wouldn't that be sufficient enough in a pleading to say this is all these things that have happened to me, ya, ya, ya, with respect, I've got 20 more trips I want to make to Somalia, to get past 12B6? Well, I think it's the second part that's lacking, Your Honor. And cases such as Lujan say that even at the motion to dismiss stage, past harms are not sufficient to show a substantial likelihood of future harm and that you need to have a concrete future plan. And even in those cases— So what he needed to plan all these trips I plan to make to Somalia? No, sometimes you just have to say here's something that I have planned for the future that's going to be affected. It's not a particularly onerous requirement. And precisely for that reason, it's one that needs to be pled. And when the government puts you on notice that this is a deficiency in your complaint at the motion to dismiss stage, you still even have a chance to amend your complaint. So if it's true as counsel said that she did ask to amend, I mean, I asked her, and if she said so, presumably she's going to tell us she did. Well, I said, shoot, the government knows it all. So did she attempt to— Not to my knowledge. In fact, under Rule 15, you have 21—you don't even have to ask the court. You have 21 days as a right after we file a motion to dismiss to amend. And even after that, you can ask for leave, which to my knowledge she didn't. And, in fact, we cite in our brief there's a scheduling order where the court essentially invited her to do so. Well, that's kind of why I asked the question, because, you know, we just get a bunch of these 12B6s, and rightly so, the law is what it is. And just given all that was alleged, I'm just wondering, well, like, you know, did you ask to replete, whatever. She says she didn't and so on. I mean, she did whatever that turns out to be. In terms of it, and I get you what Lujan says. This is like one of those cases.  I understand, Your Honor. But in addition to that, we think that even if she had alleged a future planning, the allegations in the complaint are so lacking in detail and specificity that they can't meet the standard for prospective injunctive relief, which is to show a certainly impending future harm, or at least the substantial likelihood of it. And I think that's particularly acute for the Fourth Amendment claims, because the plaintiff would need to show that there's a substantial risk that he would be subjected to the same kinds of searches, the same kinds of pat-downs or delays in the future, and not merely that he was traveling in the future. And for that additional reason, we think that standing was lacking. But even if this Court were to disagree, it could affirm on the alternative grounds a failure to state a claim on the merits. What we have here, essentially, are some Fourth Amendment claims. And many courts, all three circuits who have addressed this question, excuse me, every circuit court who have addressed this question, has said that with respect to airport searches, that there is no Fourth Amendment violation for pat-downs, questions, or other airport security screenings. In fact, reasonable suspicion isn't even required because it's an administrative search, the primary goal of which is to protect the public. And for that reason, these types of searches don't require any individualized suspicion at the airport at all. And the Fourth Amendment claim fails for that reason. A similar analysis applies at the border. The Supreme Court has said time and again that in most cases, no individualized suspicion is required at all for a border search. That includes pat-downs, lengthy delays, including hours-long delays, secondary screening, questioning, searching of luggage, all of those types of things are entirely permissible. The only types of things that require reasonable suspicion are body cavity searches, X-rays, strip searches, and none of those things, there's not even a whiff of anything close to that in this complaint. And for that reason, those Fourth Amendment claims fail on the merits. The same is true with respect to the allegations about cell phone searches at the border. Every court to have addressed this question has rejected the idea that probable cause or a warrant is required as the plaintiff has asked. And in fact, these courts also say for manual searches or what are sometimes called cursory searches or basic searches of cell phones, no reasonable suspicion is required at all. And only advanced forensic searches, the kind in which all the data is collected from the cell phone, requires reasonable suspicion. But the CBP's own policy, as we say in our brief, requires reasonable suspicion in precisely those circumstances. And so there's really no basis to issue an injunction because the policy already requires it. And in fact, that was the reason why prospective relief of this type was rejected by the First Circuit in Al-Assad earlier this year because any constitutional requirement of reasonable suspicion for advanced searches is already required by the CBP's own policy. That leaves us with the procedural due process claim against watch listing. Again, every circuit court to have addressed this question has rejected the argument that there is a protected liberty interest in being free from enhanced security screening at an airport, most recently by the Fourth Circuit in the al-Hadi case just a few months ago, which gave a very comprehensive review of all the cases, including Abdi from the Tenth Circuit and Beydoun from the Sixth Circuit. And all of them say, essentially, that security screening at the airport is not that much different from the regular screening that everybody goes through the airport. And enhanced screening can be something required of many people at the airport on a random basis or for reasons that have nothing to do with any watch list status. And therefore, it is a minimal burden experienced by many travelers, including on a random basis. And for that reason, it does not rise to the level of a constitutionally protected liberty interest. Those courts have likewise rejected any argument based on a stigma plus or any other due process theory. And I think this court can easily affirm on that basis as well. I have a question about the statute 46-110, which is really hard to figure out, I think, where that applies. What do you think—you argue it does apply here. The district court found that. What is the order that's being challenged that would give rise to direct appellate court jurisdiction under that statute? Right. I just want to emphasize—I'm going to answer your question, but I do want to emphasize that we say in our brief that we concede that it does not cover all the claims of the plaintiffs. And for the reasons we discuss in our brief, we don't actually think that you need to reach the question. I want to ask about that, too, but first tell me why. But now I'll answer— First tell me what the order was for the parts you do think are subject to that statute. The first part that I think clearly is are the Fourth Amendment claims against TSA for the manner in which they carry out enhanced security screening. And as we say in our brief, every circuit that has addressed this question treats the Fourth Amendment claim as distinct from the due process watchlisting claim, as one that's brought under—properly brought under 46.110 and not in the district court. The order being when he was actually searched or the order being just the general policy? Would be the general policy, would be what's called a standard operating procedure or a security directive that controls the manner in which a TSA officer would carry out a search at the gate or at the screening checkpoint. And all the courts agree that that is a—that Fourth Amendment claim belongs under 46.110. Well, that leads to my next question, which is if you're right, and I think I just assume you are on that for the purposes of this question, you have to bring a claim within 60 days of the order or knowing about the order. And he certainly knew about it once he was subject to these searches and screenings over almost a decade ago. So you say we can just convert it and treat it as a direct appeal to the Court of Appeals, but wouldn't we have to examine that 60-day requirement and how would that be met here? Well, I think the way it would work in this case is if what you would—the plaintiff has filed a— it's possible that—it's an interesting question that I hadn't quite sorted out because there's a different—there could possibly be a different 60-day answer to, depending on the nature of the claim, whether it's a Fourth Amendment claim or a due process claim, and I take it that's what you're getting at. With respect to the due process claim, for example, you would go through an administrative redress process, and at the end of that you would get an order and you would need to appeal within 60 days of that point. With respect to the Fourth Amendment claim, you might say it's within 60 days of the search itself rather than any redress because there's no particular redress for that process. So is that timely? Was this case filed within 60 days of any search? Well, it's hard for me to answer that, Your Honor, because for most of the searches I don't know when they occurred, and that goes back to our standing issue, which is a lot of these things it's talked about in the passive voice, I was searched, it doesn't say by whom, it doesn't say when. So I couldn't really answer that. I think that there are—it's possible that there are some, I think they mentioned some in 2019, and it's possible that they filed their complaint within 60 days, but since I don't know the precise dates of the searches, they're not listed in the complaint, I couldn't answer that myself. I think the plaintiff would be in a better position to do so. My other concern about your argument that we should just convert this on these certain issues to a direct appeal to the Court of Appeals, which, I mean, it's attractive because this is a mess on deciding how 46110 works, but my other concern is if it is a direct appeal to the Court of Appeals, there's no 12B6 standard. There's no complaint that gets filed. I mean, you well know if you challenge an agency order directly in the Court of Appeals, you know, you don't file a complaint in the Court of Appeals, and there's no 12B6 standard in the Court of Appeals. The Court of Appeals just—you brief the case, and the court looks at the agency record and decides whether it holds up under administrative law principles. So I'm trying to—how would the case be analyzed if it was a direct appeal under that statute? Right. I think it depends a little bit on which claims you thought were covered by 46110, and for example, I think of Gilmore v. Gonzalez, which is a Ninth Circuit case in which the Court of Appeals essentially transferred to itself, and it was a Fourth Amendment claim, and they basically said we're just going to treat this as if it was filed in front of us, and we just think that the Fourth Amendment claim has no merit, essentially treating it like a motion to dismiss at that stage and dismiss the petition for that reason. And, you know, often when you have a case which is filed on direct review, whether it's under 46110 or the Hobbs Act or any other direct review provision in the Court of Appeals, we would just brief why the claim fails on the merits, and the court would sort of address it that way. And sometimes there are cases in 46110 and others where we file a pre-briefing motion to dismiss for lack of standing, and sometimes courts' motions panel would rule on it that way. But there's no agency record filed, which is why it doesn't seem like a weird statute, because normally you'd have the order, there would be an agency record you'd review on appeal. We don't have that here, right? Right. And if you look at some of the cases that we cite in our brief on 46110 as applies to the Fourth Amendment claim, the courts do talk about that question. They said, you know, if we actually got past sort of what would effectively be the motion to dismiss stage, we could order the agency to file the record here, but we don't really need to do that because it's essentially a Fourth Amendment claim, and airport security screening we know doesn't really require any individualized suspicion at all, so there's no real reason for the court to look into the record in those cases. There may be some in which, you know, you transfer to yourself and you say, you know, we need a little bit more, but 46110 actually has a subsection that allows you to order the agency to produce more of the record, if that's necessary, to decide the appeal. And I'm happy to answer any other questions that the court may have, if you have any. Well, I note that you argued the case in the Fourth Circuit which involved a Fifth Amendment due process issue, but I also note it was a summary judgment case and not a 12B-6, so I know the claims were, I guess, not identical, but I did note it was a summary judgment that the Fourth Circuit reversed and sent back on a due process claim. Did the ‑‑ was there a feature of the 12B-6, or it just ‑‑ No, you're right. That's just a curiosity question. Well, El Hadi, which is the case that I think you're referring to, was decided by the District Court on summary judgment. The Court of Appeals didn't send it back. Well, it only sent it back for purposes of entering judgment for the United States, but the theory of the case that the Fourth Circuit adopted was that there was no protected liberty interest in enhanced security screening, and for that ‑‑ that's a theory that would apply at the motion to dismiss stage, and, in fact, El Hadi said our case is very similar to both Abdi and Bodine. Those cases were decided on a motion to dismiss, not on summary judgment, and the legal theory that there's no protected liberty interest is one that could be decided at 12B-6 grounds because it fails to state a claim on the merits. Okay. And if there's no further questions, I would ask the Court to affirm the District Court judgment. Judge Will, did you have a question? Okay.  Thank you, Your Honors. All right. Back to you, Counsel. Ms. Jump for rebuttal. Yes. Thank you, Your Honors. First of all, I want to begin after having clarified and checked that as we identify in our opening brief, we did not specifically request from the District Court the right to amend the pleadings. However, the District Court's dismissal was without prejudice, and as we set forth in our brief as well that under the authority of Federal Civil Procedure 15A, as well as Whitmire and Foman v. Davis, this would be a ‑‑ this would not cause undue surprise or substantially change the scope of the litigation. Yeah, but it makes a difference whether you did or you didn't, which is why I asked. Yes, Your Honor. I get your answer, but it makes a difference. I appreciate that. That's why I wanted to check. So now you're clarifying that you didn't. That's all. The record is clear. All right. Go forward. You've got a lot to talk about. I do. I also would say that in the issues of judicial economy, again, if he could potentially just file a brand-new lawsuit and start all over based on more recent actions, we'd prefer not to do that. I don't think that that would be a good use of the Court's time, but hypothetically we could start again based on everything that has happened since 2019. I do want to address, first of all, that both Lujan and Elhadi were, in fact, as this Court noted, motion for summary judgment cases, not Rule 12 cases. And in Lujan as well, the complaint was that there were someday allegations. I might want to take advantage of this. I think I plan to. Mr. Getty has established far more than that and has shown in the complaint at specific paragraphs of 126 through 129, 148 through 151, and 156 and 157, specifically that he expects that the harm that he's endured will affect his business, his ability to do business, his right to travel with his family, the fact that his family doesn't want to travel with him anymore because when they travel with him, they get enhanced searches. All of that has been addressed as in the complaint as to specific as to Mr. Getty and things that go far beyond just someday allegations. Again, as to the Elhadi case as well, the Fourth Circuit's holding in that was based on what it referred to as a plethora of different circumstances and that it was being asked to give broad weight to outlier experiences. That's not what we have here. And what was addressed in Elhadi was where some of the plaintiffs had alleged that they had— Oh, don't talk about Elhadi because you're going to run out of time. Mr. Wallman has come at you really hard on the standing proposition, so you need to talk about that. And then alternatively, the failure to state a claim. So any time you have, at least let us hear from him, and he came out the blocks pretty strong. So you need to tell us how you stay in court. Okay. We can do that. Again, as to the Fourth Amendment, I don't think that there's reasonable suspicion. Sorry? No, no, I'm sorry. Just clear my throat. Reasonable suspicion, it's correct, is not required for a standard search, but everything that Mr. Getty alleges is far beyond standard. He doesn't allege that he's been subjected to standard searches. 46-110, as my colleague Acrosio discussed on that, presumes that there is, as this Court noted, a fully developed administrative record. We don't have that here. There's no developed—there's one letter that he's received. Nothing has been provided. Also, 46-110 would not apply to the Fourth Amendment claims. We don't believe that this situation is appropriate or subject to 46-110 anyway because of the entities listed. And again, as he had mentioned previously and as this Court had asked about regarding individual agents, there's so little known about, as I mentioned earlier, as to what instructions are being given to CBP agents or being given to TSA agents. I don't know at this point who would—you know, that they necessarily did anything outside the course and scope of their jobs. That's something where, again, we would just want the right to be able to go through discovery in order to obtain more information about what policy, if any, they were following or if they were not following any policy. But based on the repeated incidences suffered by Mr. Getty, it sure seems like it wasn't just rogue agents after rogue agents after rogue agents acting outside the scope of their specific authority. And then I would, again, just to wrap up, say that to the extent that the Fourth Amendment, again, does not necessarily show—to the extent that opposing counsel argued that nothing more than— that reasonable suspicion is not required, again, that is as to standard searches. This is different than the case that this Court considered in Molina v. Isidoro where there is a suitcase full of probable cause. That's not the situation here. And I just would like to finish with the Court's—to leave the Court with a quote from Thurgood Marshall that the process of democracy is one of change. Our laws are not frozen into immutable form. They are constantly in the process of revision in response to the needs of a changing society. And some of the rules, some of the case holdings that we're looking at, some of what currently governs searches at the border, searches at the gate, those sorts of things, even going back to, for example, Skipwith, which the government relies on, are outdated in light of current circumstances. We have people traveling with a lot more information on them in one form or another than they ever have in the past. If you want to make one last little sentence on your case here as opposed to other things, I'll let you do it real, real quickly. Okay. Yes, Your Honor, I appreciate that. So I would say that I believe that some of the authority here does not apply to the current circumstances. When all searches were done at gates and only at gates, that was a better approach. That's not what we have here. The law needs to adapt, and we believe that we've set forth sufficient circumstances where the law, justifying that here, and to the extent that we have not, we do request the right to remand and to clarify. And I thank you for your time. All right. Thank you, Ms. Jump. Thank you, Mr. Malloy. I appreciate the briefing in the case, annual argument. That completes the orally argued cases for today.